Denisse O. Gastélum, SBN 282771
**GASTÉLUM LAW, APC**
3767 Worsham Ave.
Long Beach, California 90808
Tel: (213) 340-6112
Fax: (213) 402-8622
Email: dgastelum@gastelumfirm.com

Christian Contreras, Esq. (SBN 330269)
CC@Contreras-Law.com
**LAW OFFICES OF CHRISTIAN CONTRERAS**
**PROFESSIONAL LAW CORPORATION**
360 E. 2nd St., 8th Floor
Los Angeles, California 90012
Tel: (323) 435-8000; Fax: (323) 597-0101

Attorneys for Plaintiffs,
ESTATE OF JAMES EVANS, *et al.*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

ESTATE OF JAMES EVANS, by and through successors in interest, LASHONDA BANKS and GODFREY EVANS; LASHONDA BANKS individually; GODFREY EVANS, individually,

               Plaintiffs,

    v.

COUNTY OF LOS ANGELES, a public entity; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a public entity; SHERIFF ROBERT LUNA, individually; and DOES 1 through 10, individually,

               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CASE NO.:**

**COMPLAINT FOR DAMAGES**

1. Failure to Protect from Harm, Fourteenth Amendment Violation (42 U.S.C. § 1983);
2. Failure to Provide Medical Care, Fourteenth Amendment Violation (42 U.S.C. § 1983);
3. Deprivation of the Right to Familial Relationship with Decedent (42 U.S.C. § 1983);
4. Policies, Customs, Practices Causing Constitutional Violations (*Monell*, 42 U.S.C. § 1983);
5. Supervisory Liability Causing Constitutional Violations (Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983);
6. Negligence – Wrongful Death;
7. Negligence – Medical Malpractice;
8. Violation of California Government Code §845.6;
9. Violation of California Civil Code §52.1 (Tom Bane Act)

**DEMAND FOR JURY TRIAL**

**COMPLAINT FOR DAMAGES**

**COME NOW** Plaintiffs ESTATE OF JAMES EVANS, by and through successors in interest, LASHONDA BANKS and GODFREY EVANS; LASHONDA BANKS individually; GODFREY EVANS, individually, and allege as follows:

**I.**

## INTRODUCTION

1.      This civil rights action seeks to establish the true and unequivocal facts surrounding the in-custody death of pretrial detainee James Evans who died in-custody on October 1, 2023, at the Los Angeles County Sheriff's Department, Men's Central Jail. This action also seeks to bring to public light the deliberate disregard for safety and protection carried out by the individual defendants in the present action.

2.      This civil rights action further seeks to establish the violations of fundamental rights under the United States Constitution, which resulted in the death of James Evans on or about October 1, 2023.

3.      James Evans was the cherished son of Lashonda Banks and Godfrey Evans. At a very young, James took on the role of being the protector of his family, which included his three younger siblings and an older sister. He is described by his family as an artist, an athlete and a jokester. James' relationship with his mother was unmatched; indeed, he cherished being a "mama's boy" as he knew that he would forever and always be his mother's first true love.



Unfortunately, at the age of 16, James was involved in a car accident where he suffered a brain injury, resulting in a post-traumatic seizure disorder. Despite this hardship, James remained positive and hopeful to live a full life creating a family of his own—one day. That day never came, however, when

he died alone in his cell following his *numerous* requests to be given medical treatment for his seizures, all of which were ignored by the custody and medical staff. James untimely death is a profound and unimaginable loss to his beloved parents, Lashonda and Godfrey, and his four siblings.

4.     In 2022, the year prior to James Evan's death, Defendant COUNTY OF LOS ANGELES' correctional facilities, including the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT's Men's Central Jail, Twin Towers Correctional Facility, Century Regional Detention Facility, Inmate Reception Center and the Pitchess Detention Facilities (hereinafter collectively "COUNTY Jails"), have resulted in forty-three (43) in-custody deaths. The deaths include eight (8) overdoses, three (3) homicides resulting from inmate-on-inmate violence, four (4) suicides, twenty (20) "natural cause" deaths, one (1) undetermined death, two (2) accidental deaths and five (5) deaths with pending investigations.

5.     Despite these alarming numbers for 2022, James Evans's death is one of forty-five (45) in-custody deaths at the COUNTY Jails during the 2023 calendar year.

6.     Long before James Evans's death, each of the individually named Defendants from the COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, including Defendants ROBERT LUNA, and DOES 1 through 10, knew that there existed a great indifference to the safety and protection of the incarcerated persons who were in the government's custody within the COUNTY Jails.

7.     The individual defendants named in the present lawsuit were repeatedly put on notice of the great dangers which existed within the COUNTY Jails through the long history of in-custody deaths; specifically those that occurred in 2023, at Men's Central, where decedent James Evans was housed.

8.     Indeed, the individual Defendants named in this lawsuit have been intimately familiar with the inhumane conditions existing in the COUNTY Jails. The individual Defendants have been put on notice through the various actions taken

against them by federal judges in the *Rutherford* actions, dating from 1978 to present day, wherein the ACLU exposed, and continues to expose, the horrific conditions of the Los Angeles County Jails. [1]

9.     The initial *Rutherford* action was filed in 1975, and served to expose the inhumane conditions at the COUNTY Jails which were so dire that they were found to have violated the constitutional right against cruel and unusual punishment under the Eighth Amendment. In 2005, the Rutherford action narrowed in on the inhumane treatment of incarcerated persons, wherein Judge Pregerson stated that jail conditions were "inconsistent with basic human values" and issued a ruling ordering Defendants to develop a comprehensive plan to improve conditions.[2] This plan was to be overseen under the ongoing *Rutherford* consent decree.

10.     During the summer of 2022, attorneys charged with monitoring conditions under the *Rutherford* consent decree visited COUNTY facilities and witnessed abhorrent conditions, including (1) people with serious mental illness chained to chairs for days at a time, where they sleep sitting upright, (2) dozens of people crammed together, sleeping head-to-foot on the hard concrete floor, (3) people defecating in trash cans and urinating on the floor or in empty food containers in shared spaces, (4) unhygienic conditions, including floors littered with trash, overflowing sinks and toilets, no access to showers or clean clothes for days, and lack of adequate access to drinking water and food, and (5) failure to provide adequate health care, including failure to provide people with serious mental illness or chronic medical conditions their medications, or to provide care to people dangerously detoxing from drugs and alcohol. These conditions existed a year prior to when James Evans would enter COUNTY facilities.

11.     In the year of James Evans tragic death, the Court in *Rutherford* issued an Order deciding to permanently prohibited Defendants from holding an

---

[1] *See Rutherford v. Pitchess*, 457 F. Supp. 104 (C.D. Cal. 1978).
[2] *See* https://www.aclusocal.org/en/news/rutherford-v-pitchess-centennial

**COMPLAINT FOR DAMAGES**

incarcerated person in the Inmate Reception Center ("IRC") clinic area, cage, or any cell in the IRC without providing ongoing access to adequate medical and mental health care, including but not limited to regular pill call, because of these conditions.[3]

12.    Despite this long history of complete disregard to the safety and protection of incarcerated people, each of the individually named defendants in this lawsuit deliberately failed to take even modest actions to prevent in-custody deaths at the COUNTY Jails. These actions include (1) comprehensive intake screenings and evaluations, (2) diagnosis, (3) referrals to medical professionals, (4) treatment plans, (5) tracking and medical record keeping, (6) staffing, (7) communication, and (8) quality assurance. Thus, by the time decedent James Evans was taken into custody and placed at the Men's Central Jail, the jail was infested with endemic, ongoing and unabated risks of injury or death to incarcerated persons – risks which indeed resulted in James Evans's death on October 1, 2023.

## II.
## JURISDICTION AND VENUE

13.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourteenth Amendment to the United States Constitution, and the laws and Constitution of the State of California. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

14.    This Court has the authority to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201, as well as Federal Rules of Civil Procedure 57, including pursuant to the Court's inherent equitable powers.

15.    Venue is proper within the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the events and omissions giving rise to Plaintiffs' claims occurred within this district.

///

---

[3] *See* https://www.aclusocal.org/en/press-releases/aclu-reaches-landmark-settlement-la-county-jails-case

**COMPLAINT FOR DAMAGES**

### III.

### PENDANT CLAIMS

16.     Plaintiffs presented their government claims on March 29, 2024. The government claims were rejected on April 24, 2024. Indeed, Plaintiffs filed the instant action within six months of the rejection. As such, Plaintiffs have complied with the California Tort Claims Act requirements with respect to their claims arising under state law.

17.     With respect to these supplemental state claims, Plaintiffs request that this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such claims as they arise from the same facts and circumstances which underlie the federal claims.

### IV.

### PARTIES

**A. Plaintiffs**

18.     Plaintiff LASHONDA BANKS, is and was, at all times relevant hereto, the natural mother of decedent James Evans, and at all times relevant hereto was a resident of the County of Los Angeles, California. Plaintiff LASHONDA BANKS brings these claims pursuant to California Code of Civil Procedure §§ 377.20 *et seq.* and 377.60 *et seq.*, which provide for survival and wrongful death actions. Plaintiff LASHONDA BANKS also brings her claims individually and on behalf of decedent JAMES EVANS on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law. Plaintiff LASHONDA BANKS also brings these claims as a Private Attorney General, to vindicate not only her rights, but others' civil rights of great importance.

19.     Plaintiff GODFREY EVANS, is and was, at all times relevant hereto, the natural father of decedent James Evans, and at all times relevant hereto was a resident of the County of Los Angeles, California. Plaintiff GODFREY EVANS brings these claims pursuant to California Code of Civil Procedure §§ 377.20 *et seq.* and 377.60 *et*

*seq.*, which provide for survival and wrongful death actions. Plaintiff GODFREY EVANS also brings his claims individually and on behalf of decedent JAMES EVANS on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law. Plaintiff GODFREY EVANS also brings these claims as a Private Attorney General, to vindicate not only his rights, but others' civil rights of great importance.

**B. Defendants**

20.     Defendant COUNTY OF LOS ANGELES (hereinafter also "COUNTY") owns, operates, manages, directs and controls Defendant LOS ANGELES COUNTY SHERIFF'S DEPARTMENT (hereinafter also "LASD"), also a separate public entity, which employs other Doe Defendants in this action. At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including LASD employees complied with the laws and the Constitutions of the United States and of the State of California.  Defendant COUNTY, through LASD, is and was responsible for ensuring the protection and safety of all persons incarcerated at the LASD correctional facilities, including Men's Central Jail.

21.     Defendant ROBERT LUNA ("SHERIFF LUNA"), at all times mentioned herein, is the Sheriff of the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT (hereinafter also "LASD"), the administrator of the COUNTY Jails, including Men's Central Jail, and the custodian of the pretrial detainees within it; and the ultimate policy maker for the LASD and the COUNTY Jails.[4] SHERIFF LUNA and his custody staff, or those working in the jail, DOES 1 through 10, were peace officers, sergeants, captains, lieutenants, commanders and undersheriffs, doctors, nurses and/or civilian employee agents, policy makers and/or agents and

---

[4] Notably, Sheriff Villanueva conceded to Sheriff Luna in his bid for re-election in November of 2022. *See* Corina Knoll & Jill Cowan, *The L.A. Sheriff Concedes After a Combative First Term,* N.Y. TIMES (Nov. 15, 2022), available https://www.nytimes.com/2022/11/15/us/politics/los-angeles-sheriff-villanueva-concedes.html.

**COMPLAINT FOR DAMAGES**

representatives of the COUNTY and the LASD, as well as employees, agents and representatives of said Defendants. At all times relevant hereto, each of those named as DOES, were acting within the course and scope of their employment which was incidental to Defendants COUNTY and the LASD's enterprise, and the wrongful acts hereinafter described flow from the very exercise of their authority. They are sued in their individual and official capacities. SHERIFF LUNA is sued in his personal and individual capacity as a supervisory official for his own culpable action or inaction in the training, supervision, or control of his subordinates, or for his acquiescence in the constitutional deprivations which this Complaint alleges, or for conduct that showed a reckless or callous indifference to the rights of others. SHERIFF LUNA's affirmative conduct involves his failure to ensure enforcement of policies, rules, or directives that set in motion a series of acts by others which he knew or reasonably should have known, would cause others to inflict the constitutional injury.

22.     Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 10 ("DOE Defendants") and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of each DOE Defendant when they have been ascertained.

23.     The identities, capacities, and/or nature of involvement of the defendants sued as DOES 1 through 10 are presently unknown to the Plaintiffs who therefore sue these defendants by fictitious names. Plaintiffs are informed, believe, and thereupon allege that DOES 1 through 10 include individual law enforcement personnel and medical personnel employed by the LASD and the COUNTY Correctional Health Services, and that they were involved in some manner and are legally responsible for the wrongful acts and conduct alleged herein. Plaintiffs will amend this complaint to substitute the DOE Defendants' true names and capacities when they have been ascertained. Plaintiffs are informed, believe, and thereupon allege that each DOE

defendant is a resident of California. Upon information and belief, DOES 1 through10 were and still are residents of the COUNTY OF LOS ANGELES, California. DOES 1 through 10 are sued in both their individual and official capacities.

24.    At all relevant times, DOES 7 and 8 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY Correctional Health Services. At the time of the incident, DOES 7 and 8 were acting under color of law within the course and scope of their duties as employees for the COUNTY Correctional Health Services. They had supervisorial authority over DOES 1 through 10, and the COUNTY Correctional Health Services employees at the COUNTY Jails. DOES 7 and 8 were acting with complete authority and ratification of their principal, Defendant COUNTY.

25.    At all relevant times, DOES 9 and 10 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY. At the time of the incident, DOES 9 and 10 were acting under color of law within the course and scope of their duties as employees for the LASD and/or the COUNTY. They had supervisorial authority over DOES 1 through 10, and the employees of the LASD. DOES 9 and 10 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

26.    Each of the defendants, including the DOE defendants, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by Plaintiffs by, among other things, personally participating in the unlawful conduct, acting jointly, or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct; by failing and refusing to initiate and maintain adequate training and supervision; by failing to enact policies to address the constitutional rights of protesters despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

///

27.     Plaintiffs are informed and believe and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiffs' and decedent James Evans's constitutional rights and other harm.

28.     Plaintiffs are informed, believe, and thereupon allege that, at all times relevant hereto, Defendants, and each of them, acted as the agents, servants, and employees of each of the other defendants.

29.     In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

30.     In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under the color of law.

## V.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

31.     On August 21, 2023, James Evans was taken into the custody of the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT. When James Evans was arrested and taken into custody, deputies were advised that he had a history of post-traumatic seizures and needed his medications. The need for adequate access to medication was so severe, that a medication prescribed to James Evans had a side effect of death if not taken properly.

32.     Even with these medical issues, James Evans was placed on a top bunk, which forced James Evans to advocate for himself to indicate he could not be on the

top bunk due to his seizures. Because of this, James Evans was then placed into a one-man cell by COUNTY employees. Despite the risk of placing someone alone in a cell who experiences post-traumatic seizures, as they would be without a cellmate to call for help when experiencing an emergency, COUNTY employees still did so to decedent James Evans.

33.    During James Evans's forty-one (41) days incarcerated, he experienced numerous seizures. Upon information and belief, one of the seizures occurred while he was in the shower. Even though James Evans was experiencing these medical emergencies, he was still being given his seizure medication at sporadic times. Upon information and belief, there were instances James Evans arrived back to COUNTY facilities from court and was told by COUNTY employees that he "missed pill call."

34.    It only took about forty-one (41) days of enduring one medical emergency after another, compounded by the denial of essential medications for his safety and well-being, for COUNTY facilities and employees to fail James Evans in the most catastrophic manner possible—ultimately costing him his life.

35.    On September 30, 2023, James Evans requested to COUNTY employees to see a doctor. Upon information and belief, he told COUNTY employees that he could not feel his hands and that he was lightheaded. Despite these obvious and concerning signs that any person, specifically a person with post-traumatic seizures, was experiencing health issues, COUNTY employees turned James Evans away.

36.    On October 1, 2023, James Evans was found unresponsive in his one-man cell in Men's Central Jail. He was found by COUNTY employees with his knees on the ground and his torso on the bunk. COUNTY employees then tried to utilize CPR on James Evans, as they reported a "faint pulse." Nevertheless, this "faint pulse" was lost, and James Evans was pronounced dead at 11:09 PM.

37.    Upon information and belief, DOES 1 through 10 had an opportunity to observe the clear signs of James Evans's medical needs including symptoms of past seizures, and a potential seizure with the symptoms he was exhibiting the night prior.

In fact, James Evans was in desperate need of medical care, so much so, that he had to request a doctor himself. Defendants DOES 1 through 10, inclusive, failed to address James Evans's health issues and medical needs.[5]

38.    Upon information and belief, due to the COUNTY Jails patterns and practices of not conducting proper and timely Title 15 Welfare and Safety Checks, James Evans's dire need for emergency medical intervention went unnoticed by the Men's Central Jail custody, and medical staff, who were responsible for monitoring and ensuring the welfare of all incarcerated persons, including James Evans.

39.    Upon information and belief, Defendants DOES 1 through 10 had an opportunity to observe the clear signs of James Evans's medical needs including symptoms of post-traumatic seizures. In fact, James Evans was in desperate need of medical care; however, despite these express signs, Defendants DOES 1 through 10 were indifferent to James Evans's health and safety. Indeed, these failures were in violation of the COUNTY's Correctional Health Services Policy M230.01, which provides that COUNTY facilities shall "have at least one physician available to treat patients. Physician services shall be available 7 days a week, 24 hours a day." [6]

40.    JAMES EVANS, despite requesting to see a physician the day prior to being found lifeless, was denied his right as per policy, to see a physician. DOES 1

---

[5] A local government's failure to train its employees may also create § 1983 liability when the "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). However, a plaintiff can "prov[e] a failure-to-train claim without showing a pattern of constitutional violations where 'a violation of federal rights may be a ***highly predictable consequence*** of a failure to equip law enforcement officers with specific tools to handle recurring situations.'" *Long v. County of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (emphasis added); *see also Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997) ("The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected 'deliberate indifference' to the obvious consequence of the policymakers' choice—namely, a violation of a specific constitutional or statutory right.").

[6] *See* County of Los Angeles Sheriff's Department Medical Services Bureau, Physician Services.

**COMPLAINT FOR DAMAGES**

1  through 10 were negligent in following procedure to continue necessary, life-
2  threatening care to decedent James Evans, which cost him his life.

3      41.    JAMES EVANS was a pretrial detainee, and therefore, innocent until
4  proven guilty.

5  ## VI.

6  ## FACTUAL ALLEGATIONS COMMON TO *MONELL* AND
7  ## SUPERVISORIAL CAUSES OF ACTION

8      42.    Based upon the principles established in *Monell v. Dep't of Soc. Servs. of*
9  *City of New York*, 436 U.S. 658 (1978), Defendants are liable for all injuries sustained
10  by Plaintiffs as set forth herein. In *Monell v. Department of Social Servs.*, 436 U.S.
11  658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that
12  municipalities were "persons" under § 1983 and thus could be held liable for causing
13  a constitutional deprivation.3 *Id.* at 690, 98 S.Ct. 2018. The Court explained that
14  while a municipality may not be held liable under § 1983 for the torts of its
15  employees on a theory of respondeat superior, liability may attach where the
16  municipality *itself* causes the constitutional violation through the execution of an
17  official policy, practice or custom. *Id.* at 690–691, 98 S.Ct. 2018.[7]

18      43.    To establish municipal liability under *Monell v. Dep't of Soc. Servs. of*
19  *City of New York*, 436 U.S. 658 (1978), a plaintiff must prove: (1) that [the plaintiff]
20  possessed a constitutional right of which she was deprived; (2) that the municipality
21  had a policy/custom/practice; (3) that this policy/custom/practice amounts to
22  deliberate indifference to the plaintiff's constitutional right; and, (4) that the
23  policy/custom/practice is the moving force behind the constitutional violation.
24  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir, 2011). The
25  policy/custom/practice "need only cause the constitutional violation; it need not be

26

27  [7] *See Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002) ("These alleged constitutional
28  deprivations were not suffered as a result of actions of the individual officers, but as a result of the
collective inaction of the Long Beach Police Department.").

**COMPLAINT FOR DAMAGES**

1  unconstitutional per se." *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994).

2  Recognized paths to *Monell* liability include: (1) an unconstitutional custom, practice

3  or policy behind the violation of rights; (2) a deliberately indifferent omission, such

4  as a failure to train or failure to have a needed policy; and (3) a final policy-maker's

5  involvement in or ratification of the conduct underlying the violation of rights.

6  *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-1250 (9th Cir. 2010).

7      **A. For Decades, Courts Have Consistently Found the COUNTY Jails to**

8         **Violate Constitutional Rights of Incarcerated Persons and Failures to**

9         **Provide Adequate Resources and Living Conditions**

10      44.    The Los Angeles County Jail System ("Jail") is the largest jail system in

11  the United States and in the world, currently incarcerating upwards of 14,600 people.

12  For five (5) decades, the Court has overseen lawsuits aimed at the barbaric facilities

13  that the COUNTY continues to manifest.

14      45.    It was held in 1978 that the conditions in COUNTY facilities, "present

15  poor examples of the civilized standards and concepts of dignity, humanity and

16  decency." [8]

17      46.    The order observed that:

18

19  The sight of from twenty to fifty-four men being crammed into a fourteen-foot

20  cell is a repelling experience in any society that takes pride in its high concepts

21  of human dignity. The closest comparison that I can draw to such a spectacle is

22  that of an overcrowded pig pen. If the defendants find it necessary to detain a

23  detainee in a holding cell before placing him on a bus, or after his return, ***they***

24  ***must at least give him a place to sit on a bench or a chair***. *Id*. at 114 (emphasis

25  added). [9]

26

27  ────────────────────

[8] *See Rutherford v. Pitchess*, 457 F. Supp. 104, 109, 114 (C.D. Cal. 1978).

28  [9] Findings about IRC conditions were in the context of detainees going to and from court, when
they were in the IRC for an hour or two, before returning to regular housing with mattresses, meals,

47.    Subsequent orders set out specific requirements for the COUNTY. Specifically, in 1979: Every prisoner kept overnight in the jail shall be accorded a mattress and a bed or bunk upon which to sleep. This order shall not preclude defendants from permitting inmates to be housed with full bedding but without a bunk, for one night only. *Rutherford v. Pitchess*, 457 F. Supp. 104 (C.D. Cal. 1978), *rev'd in part on other grounds sub nom. Block v. Rutherford*, 468 U.S. 576 (1984).

48.    On November 18, 2005, the parties stipulated, and the Court ordered, that "[e]very inmate kept overnight in the jail will be accorded a mattress and a bunk upon which to sleep. […] All bunks shall be supplied with full bedding. […] Inmates shall not be housed in any area where there is not reasonably close access to toilets." *Rutherford v. Block*, 2005 WL 3388141, at *1 ¶¶ 1-3, 5 (C.D. Cal. Nov. 18, 2005) (citing definitions of "bunk," "bed," "mattresses," and "bedding" as set forth in Titles 15 and 24 of the California Code of Regulations).

49.    As a result of these horrific findings not being addressed, Plaintiffs in the *Rutherford v. County of Los Angeles*, Central District of California Case No. CV 75-04111 DDP, filed to reinstate their case in September of 2022. This was only 13 months prior to the death of James Evans, whom under the care of the COUNTY, lost his life.

50.    Despite decades of courts finding the Los Angeles County Jail Systems to violate the constitutional rights of those incarcerated, corrective action has yet to be taken.

**B. The County Defendants' Indifference to the Constitutional Violations and Failures Permeating the COUNTY Jails Affecting Incarcerated Persons, Especially Those with Health Issues**

51.    Defendant SHERIFF LUNA and other COUNTY Supervisors, through their supervision of the COUNTY's medical staff were responsible for the provision of medical services at the COUNTY Jails.

---

and showers. *Rutherford*, 457 F. Supp. at 114. Today, these individuals spend days on end in these same conditions.

**COMPLAINT FOR DAMAGES**

52.     In *Rutherford v. County of Los Angeles*, Central District of California Case No. CV 75-04111 DDP, Plaintiffs' counsel visited the Clinic on June 6, 2022. They were, "stunned by the filth and levels of tension and despair encountered." Camacho Decl. Ex. A at 15-22. Between June 6 and August 11, 2022, Plaintiffs' counsel had numerous conversations with County officials, OIG staff, LASD Custodial Staff, CHS staff, and two Justice Deputies for the Board of Supervisors. Camacho Decl. ¶¶ 23-24, 32-33. These efforts culminated in a meeting on August 11 with several officials. Plaintiffs' counsel determined after this meeting that court intervention was necessary to address the catastrophe at COUNTY facilities.

53.     These same ACLU lawyers observed dozens of people who reported that they regularly take medication but did not get them while held at COUNTY facilities. It must be noted that these conditions are extremely dangerous for individuals with health conditions. It can be lethal to abruptly stop medications as was the case for James Evans. [10]

54.     Incarcerated persons also report non-existent medical care for their conditions. Ex. 3 (Dubose) ¶ 6 (his wheelchair was taken away despite difficulty walking due to a painful leg infection); Ex. 5 (Howard) ¶ 10 (asks for medical care for a toe that is cut and that he believes is broken, only given hydrogen peroxide); Ex. 8 (Perez) ¶ 8 (told medical staff he has asthma but does not have Albuterol, which he takes 3-4 times a day outside jail – breathing is labored). [11]

55.     On their June 14, 2022 visit to COUNTY facilities, the counsel in *Rutherford* spoke to people in the Inmate Reception Center in serious medical distress, including a man who said he was an insulin-dependent diabetic, had not received insulin for 36 hours, and was only fed peanut butter and jelly sandwiches and orange juice that made his blood sugar spike and crash; Ex. 15 ¶ 12; ¶ 13 (man with a fist-

[10] *See Rutherford v. County of Los Angeles*, Central District of California Case No. CV 75-04111 DDP, Document 318-1, at 32.
[11] *See Id.* at 34.

**COMPLAINT FOR DAMAGES**

1    sized hernia doubled over in obvious pain); Camacho Decl. ¶¶ 29-30 (bloody open

2    wound in one person's mouth and another with large red and swollen cut on leg). On

3    an August 26, 2022, visit, counsel saw a man in a wheelchair crying while holding up

4    his hands, showing how they were curled up and swollen. Camacho Decl. ¶ 49. [12]

5        56.    Not to mention these same individuals reported a denial of adequate food

6    and water.[13] As well as denials of showers, hygiene products, and clothing. [14]

7        57.    These constitutional violations existed over a year before October 1, 2023,

8    and continue to exist after October 1, 2023. The Defendant's indifference to these

9    violations despite their tortuous life-threatening effects on incarcerated persons such as

10    decedent James Evans, a person made even more vulnerable with health issues, is

11    unconscionable.

12        58.    Based on the aforementioned, Defendants COUNTY, LASD, SHERIFF

13    LUNA, and DOES 1 through 10, knew of the dangers that posed a risk to decedent

14    James Evans's safety, yet disregarded these dangers resulting in his death.

## VII.

## PUNITIVE/EXEMPLARY DAMAGES ALLEGATIONS

### (Against individual Defendants SHERIFF ROBERT LUNA and DOES 1 through 10)

19        59.    Each Defendants' conduct as alleged herein was done with reckless

20    disregard for human life, oppression, and malice.

21        60.    Long before decedent James Evans's death, Defendants SHERIFF

22    LUNA and DOES 1 through 10 knew that there existed a great indifference to the

23    safety and protection of the incarcerated persons who were in the government's

24    custody within the COUNTY Jails.

25    ///

[12] *Id.*
[13] *Id.*
[14] *See Id.* at 36.

**COMPLAINT FOR DAMAGES**

61.     Defendants SHERIFF LUNA and DOES 1 through 10 were repeatedly put on notice of the great dangers which existed within the COUNTY Jails through the long history of in-custody deaths, as detailed in Section VI above.

62.     Despite this long history of complete disregard to the safety and protection of incarcerated persons, Defendant SHERIFF LUNA has deliberately failed to take even modest actions to prevent in-custody deaths at the COUNTY Jails which have for a very long time been infested with endemic, ongoing and unabated risks of injury or death to incarcerated persons.

63.     The Defendant officers, and each of them, acted with malice and oppression and with a conscious disregard for Plaintiffs' rights, making the individual defendants, including SHERIFF LUNA and DOES 1 through 10 liable for punitive damages.

## VIII.

### **FIRST CLAIM FOR RELIEF**

**Failure to Protect from Harm,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(Survival Action – 42 U.S.C. § 1983)**

**By Plaintiff ESTATE OF JAMES EVANS As Against Defendants DOES 1 through 10**

64.     Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

65.     Defendants COUNTY, LASD and DOES 1 through 10 were on notice that their deficient policies, procedures, and practices alleged herein created substantial risk of serious harm to an incarcerated person in decedent James Evans's position.

66.     Each Defendant could have taken action to prevent unnecessary harm to decedent James Evans but refused or failed to do so.

67.     On August 21, 2023, and October 1, 2023, Defendants DOES 1 through 10, and each of them, made the intentional decision of placing James Evans in custody

at Men's Central Jail which was a condition under which James Evans was confined. This condition of confinement placed James Evans at a substantial risk of serious harm given that James Evans had significant medical issues including post-traumatic seizures.

68.    Defendants DOES 1 through 10, and each of them, did not take reasonable available measures to abate or reduce that risk, even though a reasonable person in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious. In fact, for example, a reasonable person in these circumstances should have abated or reduced the risk that James Evans faced by taking him to a hospital to address his medical needs instead of denying him medical attention and care. Clearly, by not taking such measures, Defendants DOES 1 through 10, caused James Evans's death.

69.    Defendants DOES 1 through 10 recognized the dire situation James Evans was in, yet failed to take corrective action. However, despite being charged with overseeing staff and James Evans's safety, Defendants failed to abate or reduce the risks that James Evans faced.

70.    Furthermore, by policy, procedure, and practice, Defendants DOES 1 through 10 deliberately disregarded the hazards and risks posed to persons incarcerated at the Men's Central Jail, as alleged above. Defendants DOES 1 through 10, failed to take any reasonable steps to mitigate the obvious and well-known risks of harm that was attendant to housing decedent James Evans at Men's Central Jail.

71.    Defendants DOES 1 through 10 routinely failed to conduct properly required welfare and safety checks at the COUNTY Jails, including Men's Central Jail, and failed to take sufficient actions to correct this problem and ensure that necessary checks were performed.

72.    As a direct and proximate result of Defendants' conduct, the civil rights of James Evans, as protected by the Fourteenth Amendment of the United States Constitution were violated. Further, decedent James Evans experienced physical pain,

severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

73.    Defendants DOES 1 through 10 subjected decedent James Evans to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

74.    As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Decedent, through Plaintiffs herein, sustained injuries and damages.

75.    The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendants COUNTY.

76.    Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## IX.

### SECOND CLAIM FOR RELIEF

**Failure to Provide Medical Care,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(Survival Action – 42 U.S.C. § 1983)**

**By Plaintiff ESTATE OF JAMES EVANS As Against Defendants DOES 1 through 10**

77.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

78.    By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, violated 42 U.S.C. § 1983, depriving decedent James Evans, through Plaintiffs herein, of the following clearly established and well-settled constitutional rights protected by the Fourth and Fourteenth Amendments to the United States Constitution: Decedent's right to be free from deliberate indifference to James

1  Evans's serious medical needs while in custody as a pretrial detainee as secured by the
2  Fourth and/or Fourteenth Amendments.

3      79.    Indeed, it was clear as soon as James Evans was taken into custody that
4  he needed medical care. However, despite James Evans's need for prompt and adequate
5  medical care, Defendants DOES 1 through 10, failed to provide James Evans with
6  prompt or adequate medical care. Worse yet, even after being screened when booked,
7  Defendants DOES 1 through 10, were further deliberately indifferent to James Evans's
8  medical needs.

9      80.    While Defendant DOES 1 through 10 assessed James Evans and classified
10 him, such classification was deliberately indifferent to James Evans's medical needs.
11 James Evans was placed on a top bunk, despite experiencing seizures. Despite the fact
12 that all James Evans's needed was a bottom bunk, and having cellmates would be
13 necessary to ensure if he was experiencing a seizure that this could be reported on his
14 behalf, James Evans was then placed in a cell by himself.

15     81.    Defendants DOES 1 through 10 were further deliberately indifferent given
16 that that should have known about James Evans's dire medical condition. In fact,
17 Defendants DOES 1 through 10 were responsible for conducting Title 15 Welfare and
18 Safety Checks. Plaintiffs are ignorant to whether such checks occurred, as no
19 information as to these welfare checks existence was provided. Despite this fact, after
20 an entire day after asking for medical assistance, DOES 1 through 10 never followed
21 up with James Evans to ensure his safety. Plaintiffs are unsure how long James Evans
22 was experiencing a medical emergency from when he last asked for assistance the night
23 prior to his death and are unsure of how often he was properly observed.

24     82.    Finally, after an unidentified amount of time of being on the brink of
25 death, James Evans was found unresponsive in his cell and DOES 1 through 10 finally
26 summoned medical care. Such was caused by Defendants DOES 1 through 10, ignoring
27 James Evans's medical needs.

28 ///

**COMPLAINT FOR DAMAGES**

83.    Defendant DOES 1 through 10 should have recognized the dire situation James Evans was in and taken corrective action. However, despite being charged with overseeing staff and James Evans's safety, Defendant DOES 1 through 10 were deliberately indifferent to James Evans's medical needs given that they did not do anything to address James Evans's medical needs until it was too late.

84.    By the actions and omissions described above, Defendant DOES 1 through 10, as alleged herein, including but not limited to their failure to provide decedent James Evans with appropriate emergency medical care, along with the acts and/or omissions of Defendants in failing to train, supervise, and/or promulgate appropriate policies and procedures to provide emergency medical and mental health care and life saving care to persons in their custody, constituted deliberate indifference to James Evans's serious medical needs, health, and safety.

85.    As a direct and proximate result of Defendants' conduct, the civil rights of James Evans, as protected by the Fourteenth Amendment of the United States Constitution were violated. Further, decedent James Evans experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

86.    Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

87.    As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Decedent, through Plaintiff herein, sustained injuries and damages.

88.    The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendants COUNTY.

89.    Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

**COMPLAINT FOR DAMAGES**

# X.

## __THIRD CLAIM FOR RELIEF__

**Deprivation of the Right to Familial Relationship with Decedent,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(42 U.S.C. § 1983)**

**By All Plaintiffs As Against Defendant DOES 1 through 10**

90.     Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

91.     The aforementioned acts and/or omissions of Defendants DOES 1 through 10 in being deliberately indifferent to decedent James Evans's protection, safety, and serious medical needs, violating decedent James Evans's constitutional rights, and their failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the untimely and wrongful death of James Evans deprived Plaintiffs LASHONDA BANKS and GODFREY EVANS, of their liberty interests in the familial relationship in violation of their substantive due process rights as defined by the Fourteenth Amendments of the Constitution.

92.     All of the acts of Defendants DOES 1 through 10 were done under color of state law.

93.     The acts and omissions of each Defendants DOES 1 through 10 deprived Plaintiffs LASHONDA BANKS and GODFREY EVANS, of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to the Fourteenth Amendment by, among other things, depriving Plaintiffs of their rights to a familial relationship with decedent James Evans without due process of law by their deliberate indifference in denying James Evans protection and safety while incarcerated at Men's Central Jail and access to medical care while suffering a medical emergency at Men's Central Jail.

94.     Defendants DOES 1 through 10 and the other involved agents and employees acted pursuant to expressly adopted official policies or longstanding

practices or customs of the COUNTY and LASD. These include policies and longstanding practices or customs of failing to provide persons in pretrial custody who are experiencing medical emergencies access to medical care as stated above and incorporated herein.

95.    In addition, the training policies of the COUNTY and LASD were not adequate to train its deputies, agents and employees to handle the usual and recurring situations with which they must deal with, including but not limited to encounters with individuals in pretrial custody who are experiencing medical emergencies. These Defendants and each of them knew that its failure to adequately train its COUNTY custody, medical staff, including other agents and employees, to interact with individuals suffering from medical emergencies made it highly predictable that its custody, and medical staff would engage in conduct that would deprive persons such as decedent James Evans, and thus Plaintiffs of their rights. These Defendants were thus deliberately indifferent to the obvious consequences of their failure to train their deputies, agents and employees adequately.

96.    Defendants COUNTY and LASD's official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Plaintiffs LASHONDA BANKS and GODFREY EVANS, and decedent James Evans by each individual Defendant's official policies and/or longstanding practices or customs are so closely related to James Evans's injuries and death and thus the deprivation of the rights of Plaintiffs as to be the moving force causing those injuries.

97.    Defendant SHERIFF LUNA, a final policymaker for the COUNTY and LASD, ratified the actions and omissions of Defendants DOES 1 through 10, all of whom were custody, medical staff at the COUNTY Jails, including Men's Central Jail, in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.

///

**COMPLAINT FOR DAMAGES**

98.    As a direct and proximate result of Defendants' conduct, the civil rights of James Evans, as protected by the Fourteenth Amendment of the United States Constitution were violated. Further, decedent James Evans experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

99.    Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

100.    As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages.

101.    The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiffs do not seek punitive damages against Defendants COUNTY.

102.    Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## XI.

## FOURTH CLAIM FOR RELIEF

**Municipal Policies, Customs, Practices Causing Constitutional Violations**

**(*Monell* - 42 U.S.C. § 1983)**

**By Plaintiff ESTATE OF JAMES EVANS As Against Defendants COUNTY OF LOS ANGELES and LOS ANGELES COUNTY SHERIFF'S DEPARTMENT**

103.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

104.    In *Monell v. Department of Social Servs*., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities were "persons" under § 1983 and thus could be held liable for causing a constitutional deprivation. *Id.* at 690, 98 S.Ct. 2018. The Court explained that while a municipality may not be

**COMPLAINT FOR DAMAGES**

held liable under § 1983 for the torts of its employees on a theory of respondeat superior, liability may attach where the municipality *itself* causes the constitutional violation through the execution of an official policy, practice or custom. *Id.* at 690–691, 98 S.Ct. 2018.[15]

105.    At all times relevant hereto, the COUNTY custody, and medical staff were required to adhere to and enforce the following policy and procedures:

a.    To deny pretrial detainees and other inmates access to timely, appropriate, competent, and necessary care for serious medical needs, requiring such inmates in crisis to remain untreated in jail instead of providing for their emergency medical needs;

b.    To allow and encourage deputies doing regular cell checks on inmates, including in safety cells, to fail to document their actual observations of the inmate's condition and status, in violation of the County of Los Angeles' written policies and state law;

c.    To allow and encourage inadequate and incompetent medical care for jail inmates and arrestees;

d.    To hire, retain and contract for obviously inadequate medical care for jail inmates and arrestees, including creating financial incentives for custodial and medical personnel not to send inmates with emergency medical needs to a hospital;

e.    To allow, encourage, and require medical staff, including licensed vocational nurses and registered nurses, to work outside their legal scope of practice and without appropriate supervision;

f.    To fail to train custody staff that medical staff, including licensed

---

[15] *See Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002) ("These alleged constitutional deprivations were not suffered as a result of actions of the individual officers, but as a result of the collective inaction of the Long Beach Police Department.").

vocational nurses, are not competent to assess or decide inmates' medical conditions, medical needs, or whether the incarcerated person should be permitted to remain in the jail versus being sent to a hospital;

g.  To allow, encourage, and require unlicensed, incompetent, inadequately trained and/or inadequately supervised staff to assess inmates' medical condition, needs, and treatment, including to decide whether or not to provide inmates with necessary emergency care and hospitalization;

h.  To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical crisis;

i.  To cover up violations of constitutional rights by any or all of the following:

   i.  By failing to properly investigate and/or evaluate incidents of violations of rights, including by unconstitutional medical care at the jail;

   ii.  By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful conduct by custodial and medical personnel;

   iii.  By turning a blind eye to custodial and medical personnel who direct, aid, and/or assist with the distribution of hazards, including illicit drugs, into the Los Angeles County jails; and

   iv.  By allowing, tolerating, and/or encouraging custodial and medical personnel to: fail to file complete and accurate reports; file false reports; make false statements; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct by withholding and/or concealing material information;

j.  To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers, LASD personnel, custodial personnel and medical

1  personnel at the jail whereby an officer or member of the LASD or
2  medical staff does not provide adverse information against a fellow
3  officer, or member of the LASD or the medical staff;

4  k.  To fail to have and enforce necessary, appropriate, and lawful policies,
5  procedures, and training programs to prevent or correct the
6  unconstitutional conduct, customs, and procedures described in
7  subparagraphs (a) through (j) above, with deliberate indifference to the
8  rights and safety of pretrial detainees, such as Decedent, and in the face of
9  an obvious need for such policies, procedures, and training programs.

10  106.  The unconstitutional actions and/or omissions of Defendants DOES 1
11  through 10, as well as other officers employed by or acting on behalf of the COUNTY
12  and LASD, on information and belief, were pursuant to the following customs, policies,
13  practices, and/or procedures of the COUNTY and the LASD, stated in the alternative,
14  which were directed, encouraged, allowed, and/or ratified by policymaking officers for
15  the COUNTY and LASD, including SHERIFF LUNA:

16  a.  To fail to properly and adequately hire, train, supervise, and monitor
17  custodial and medical personnel at the Jails;

18  b.  To fail to use appropriate and generally accepted law enforcement
19  procedures for handling persons in medical crisis;

20  c.  To fail to institute, require, and enforce proper and adequate training,
21  supervision, policies, and procedures concerning handling persons in
22  medical crisis;

23  d.  To cover up violations of constitutional rights by any or all of the
24  following:

25  i.  By failing to properly investigate and/or evaluate complaints or
26  incidents of handling of persons in medical crisis;

27  ii.  By ignoring and/or failing to properly and adequately investigate
28  and/or discipline unconstitutional or unlawful law enforcement

activity; and

iii.     By allowing, tolerating, and/or encouraging law enforcement officers to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful law enforcement conduct by withholding and/or concealing material information;

e.     To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers whereby an officer does not provide adverse information against a fellow law enforcement officer;

f.     To allow, tolerate, and/or encourage a "code of silence" among custodial and medical personnel at the COUNTY jails whereby custodial and medical personnel does not provide adverse information against a fellow staffer;

g.     To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (g) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

107.   Defendants COUNTY and LASD, through their employees and agents, and through their policy-making supervisors, SHERIFF LUNA and DOES 8 through 10, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants DOES 1 through 10, and other COUNTY and LASD personnel, with deliberate indifference to the constitutional rights of decedent James Evans, Plaintiff and others in similar positions, as described above, and therefore, those rights thereby violated.

**COMPLAINT FOR DAMAGES**

108.  Prior to the death of James Evans, high-level COUNTY supervisors, including and SHERIFF LUNA, knew or should have known of a history, dating back to the Ford Administration, with years of notice of ongoing failure to routinely check in on incarcerated individuals, knew or should have known of inadequate and/or incompetent staffing, insufficient and inadequate training/supervision/control, excessive overcrowding, the hiring of deputies in jails who exhibit deliberate indifference & reckless disregard to the safety of other incarcerated persons, subjection of violence in jails perpetrated by other incarcerated persons, and failure to take corrective measures, training deputies to monitor detainees and incarcerated persons and immediately respond to it, and failing to adequately control and discipline deputies involved in misconduct. The number of those actions is troubling and demonstrative of Defendants' years of deliberate indifference to protect detainees and incarcerated persons from unnecessary harm and their failure to take corrective action.

109.  The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, and other LASD custody and medical staff, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and LASD, including Defendants SHERIFF LUNA and DOES 8 through 10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to the authorized policymakers within the COUNTY and LASD, and that such policymakers have direct knowledge of the fact that the death of James Evans was the result of deliberate indifference to his rights to be protected and safe while in the custody of the COUNTY/LASD, and his rights to have access to medical care when suffering a medical emergency. Notwithstanding this knowledge, the authorized policymakers within the COUNTY and LASD have approved of the conduct and decisions of Defendants DOES 1 through 10 in this matter and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of James Evans. By so doing, the authorized policymakers within the COUNTY and LASD have shown affirmative agreement with the individual

Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF LUNA and DOES 8 through 10, and other policy-making officers for the COUNTY and LASD were and are aware of a pattern of misconduct and injury caused by COUNTY Jails custody and medical staff similar to the conduct of Defendants described herein, but failed to discipline culpable custody and medical staff and failed to institute new procedures and policy within the COUNTY and LASD.

110.    Long before James Evans's death, each of the individually named Defendants from the COUNTY OF LOS ANGELES and the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT knew that there existed a great indifference to the safety and protection of the incarcerated persons who were in the government's custody within the COUNTY Jails.

111.    Indeed, Defendants were repeatedly put on notice of the great dangers which existed within the COUNTY Jails through the long history of in-custody deaths, including in-custody deaths which occurred in 2023 *within* the very facility where James Evans was housed within the COUNTY Jails.

112.    Defendants have been intimately familiar with the inhumane conditions existing in the COUNTY Jails. Defendants have been put on notice through various actions taken against them in the *Rutherford* actions, dating from 1975 to present day, wherein the ACLU exposed, and continues to expose, the horrific conditions of COUNTY Jails. [16]

113.    Despite this long history of complete disregard to incarcerated persons' safety and protection, Defendants deliberately failed to take even modest actions to prevent in-custody deaths at the COUNTY Jails. These actions include (1) comprehensive intake screenings and evaluations, (2) diagnosis, (3) referrals to medical professionals, (4) treatment plans, (5) tracking and medical record keeping, (6) staffing, (7) communication, and (8) quality assurance. Thus, by the time decedent

---

[16] *See Rutherford v. Pitchess*, 457 F. Supp. 104 (C.D. Cal. 1978).

**COMPLAINT FOR DAMAGES**

James Evans was taken into custody, Men's Central Jail was infested with endemic, ongoing and unabated risks of injury or death to incarcerated persons – risks which indeed resulted in James Evans's death on October 1, 2023.

114. The Defendants' deliberate indifference towards pretrial detainees suffering from medical issues resulted in many unnecessary deaths, just looking back to 2018. From January 2018 through October 2023, at twenty-six (26) incarcerated people died from medical complications within the COUNTY Jails:

115. In 2018, Daniel Arteaga, a 27-year-old male, died as a result from medical/mental health complications. Mr. Arteaga had only been incarcerated for approximately three weeks prior to his death. Upon information and belief, the custody staff's failure to properly supervise/monitor and medical staff's failure to provide medical care to Mr. Arteaga was a result of the unconstitutional customs and practices permeating the COUNTY Jails.

116. In 2018, Steven Thach died as a result of medical/mental health complications. Mr. Thach was only 24 years old at the time of his death. Mr. Thach had a known history of schizophrenia. Mr. Thach was not found unresponsive until after custodial staff delivered snacks to inmates in their cells on March 28, 2018. He was pronounced dead at the scene. Upon information and belief, the custody staff's failure to properly supervise/monitor and medical staff's failure to provide medical care to Mr. Thach was a result of the unconstitutional customs and practices permeating the COUNTY Jails.

117. In 2018, Alberd Tersargyan died as a result of medical/mental health complications. Mr. Tersargyan was 81 years old at the time of his death. He had been incarcerated since 2010. On April 1, 2018, Mr. Tersargyan was found unresponsive in his cell during an inmate check. He was subsequently transported to the hospital in cardiac arrest. Mr. Tersargyan was pronounced dead at the hospital later that evening. Upon information and belief, the custody staff's failure to properly supervise/monitor

and medical staff's failure to provide medical care to Mr. Tersargyan was a result of the unconstitutional customs and practices permeating the COUNTY Jails.

118.    In 2018, Lewis Nyarecha died as a result of medical/mental health complications. Mr. Nyarecha was a 25-year-old pretrial detainee who had been in-custody at the COUNTY jail for less than one month prior to his death. On August 28, 2018, Mr. Nyarecha was found unresponsive in his cell in a rigor mortis state which was indicative of a muscle spasm likely induced by his ingestion of quetiapine, a medication commonly used to treat schizophrenia. Mr. Nyarecha was pronounced dead at the scene. Upon information and belief, the custody staff's failure to properly supervise/monitor and medical staff's failure to provide medical care to Mr. Nyarecha was a result of the unconstitutional customs and practices permeating the COUNTY Jails.

119.    In 2018, Mr. Paredes died as a result of medical/mental health complications. Mr. Paredes was 30 years old at the time of his death. He had a history of mental illness specifically depression. He had been incarcerated for less than 24 hours prior to his death. Mr. Paredes was pronounced dead at the scene despite resuscitative efforts. Upon information and belief, the custody staff's failure to properly supervise/monitor and medical staff's failure to provide medical care to Mr. Paredes was a result of the unconstitutional customs and practices permeating the COUNTY Jails.

120.    In 2019, Thomas Banuelos, a 30-year-old male, died as a result from medical/mental health complications. It is estimated that Mr. Banuelos was on the floor unresponsive for approximately 30 minutes. Mr. Banuelos was transported to the hospital where he was later pronounced dead. Mr. Banuelos had been incarcerated for less than two weeks prior to his death. Upon information and belief, the custody staff's failure to properly supervise/monitor and medical staff's failure to provide medical care to Mr. Banuelos was a result of the unconstitutional customs and practices permeating the COUNTY Jails.

**COMPLAINT FOR DAMAGES**

121.    In 2019, pretrial detainee Jeffrey Barnett died while in-custody at the Twin Towers Correctional Facility due to medical/mental health complications. Mr. Barnett was 53 years old at the time of his death. Upon information and belief, the custody staff's failure to properly supervise/monitor and medical staff's failure to provide medical care to Mr. Barnett was a result of the unconstitutional customs and practices permeating the COUNTY Jails.

122.    In 2019, Cody Jones, a 25-year-old male, died as a result from medical/mental health complications. Mr. Jones was transported to the hospital where he was subsequently pronounced dead. Upon information and belief, the custody staff's failure to properly supervise/monitor and medical staff's failure to provide medical care to Mr. Jones was a result of the unconstitutional customs and practices permeating the COUNTY Jails.

123.    In 2019, Patrick Clancy passed away in a nursing home after being placed on hospice care. Approximately one year prior, Mr. Clancy was found dead in his cell while in custody at the Twin Towers Correctional Facility. Mr. Clancy was initially transported to the hospital where he was placed on a ventilator and never regained consciousness. While at Twin Towers, Mr. Clancy was in a mental health unit. Mr. Clancy was 59 years old at the time of his death on November 19, 2019. Upon information and belief, the custody staff's failure to properly supervise/monitor and medical staff's failure to provide medical care to Mr. Clancy was a result of the unconstitutional customs and practices permeating the COUNTY Jails.

124.    In 2020, Michael Zivalich, a 31-year-old male, died as a result from medical/mental health complications. On July 19, 2020, Mr. Zivalich was found dead in his cell. Mr. Zivalich had a known history of depression and attention deficit disorder. Upon information and belief, the custody staff's failure to properly supervise/monitor and medical staff's failure to provide medical care to Mr. Zivalich was a result of the unconstitutional customs and practices permeating the COUNTY Jails.

**COMPLAINT FOR DAMAGES**

125.   In 2020, Roberto Escobar died as a result from medical/mental health complications. Mr. Escobar was found unresponsive by another incarcerated person and not custodial staff. As a result of the incident, Mr. Escobar suffered multiple blunt force injuries to his head and neck. On November 18, 2020, Mr. Escobar succumbed to these injuries after being hospitalized for approximately one month. Upon information and belief, the custody staff's failure to properly supervise/monitor and medical staff's failure to provide medical care to Mr. Escobar was a result of the unconstitutional customs and practices permeating the COUNTY Jails.

126.   In 2020, Vincent Nelson died as a result from medical/mental health complications at Men's Central Jail. On December 18, 2020, Mr. Nelson was found dead in his cell. Mr. Nelson was transported to the LAC/USC Medical Center where he was diagnosed with an anoxic brain injury. Four days later, Mr. Nelson succumbed to his injuries and died on December 22, 2020. Mr. Nelson was 27 years old at the time of his death. Upon information and belief, the custody staff's failure to properly supervise/monitor and medical staff's failure to provide medical care to Mr. Nelson was a result of the unconstitutional customs and practices permeating the COUNTY Jails.

127.   In 2021, Lorenzo Anguino died as a result from medical/mental health complications Mr. Anguino was pronounced dead on January 8, 2021. The mechanism of death was asphyxiation (i.e., choking). Mr. Anguino was 27 years old at the time of his death. Upon information and belief, the custody staff's failure to properly supervise/monitor and medical staff's failure to provide medical care to Mr. Anguino was a result of the unconstitutional customs and practices permeating the COUNTY Jails.

128.   In 2021, Mark Carrillo died as a result from medical/mental health complications at Men's Central Jail. Mr. Carrillo had been housed at Men's Central Jail for a month prior to his death. During that month, Mr. Carillo engaged in alarming behavior which caused him to be housed in a single-man cell. Mr. Carillo

was 38 years old at the time of his death. Upon information and belief, the custody staff's failure to properly supervise/monitor and medical staff's failure to provide medical care to Mr. Carrillo was a result of the unconstitutional customs and practices permeating the COUNTY Jails.

129.   In 2021, Donry Bernabe died as a result from medical/mental health complications at LASD station jail. On February 16, 2021, Mr. Barnabe was arrested by LASD sheriff's deputies and booked at the LASD Palmdale Station Jail. Hours later, an incarcerated person observed Mr. Bernabe praying on his knees as he faced his cell wall. Mr. Bernabe was then found dead inside his cell. Mr. Bernabe was 50 years old at the time of his death. Upon information and belief, the custody staff's failure to properly supervise/monitor and medical staff's failure to provide medical care to Mr. Bernabe was a result of the unconstitutional customs and practices permeating the COUNTY Jails.

130.   In 2021, Wilson Barrios died as a result from medical/mental health complications at Men's Central Jail. Mr. Barrios was transported to the LAC/USC Medical Center where he was diagnosed with global brain damage from anoxia. Three weeks following being found unresponsive, Mr. Barrios succumbed to his injuries and died on March 20, 2021. Mr. Barrios was 26 years old at the time of his death. Upon information and belief, the custody staff's failure to properly supervise/monitor and medical staff's failure to provide medical care to Mr. Barrios was a result of the unconstitutional customs and practices permeating the COUNTY Jails.

131.   In 2021, Angel Sapien died as a result from medical/mental health complications at Men's Central Jail. On March 12, 2021, Mr. Sapien was found in his cell unresponsive. Mr. Sapien was 34 years old at the time of his death. Upon information and belief, the custody staff's failure to properly supervise/monitor and medical staff's failure to provide medical care to Mr. Sapien was a result of the unconstitutional customs and practices permeating the COUNTY Jails.

132.    In 2021, Sam Do died as a result from medical/mental health
complications at Twin Towers Correctional Facility. Mr. Do had been in the LASD's
custody since January 2020 time of his death. Upon information and belief, the
custody staff's failure to properly supervise/monitor and medical staff's failure to
provide medical care to Mr. Do was a result of the unconstitutional customs and
practices permeating the COUNTY Jails.

133.    In 2021, Darlene Carlisle died as a result from medical/mental health
complications at the LASD Lynwood Jail. On May 20, 2021, Ms. Carlisle was found
in her cell dead. Ms. Carlisle was 58 years old at the time of her death. Upon
information and belief, the custody staff's failure to properly supervise/monitor and
medical staff's failure to provide medical care to Ms. Carlisle was a result of the
unconstitutional customs and practices permeating the COUNTY Jails.

134.    In 2021, Alejandro Esparza died as a result from medical/mental health
complications at Twin Towers Correctional Facility. Mr. Esparza was only 23 years
old at the time of his death. Upon information and belief, the custody staff's failure to
properly supervise/monitor and medical staff's failure to provide medical care to Mr.
Esparza was a result of the unconstitutional customs and practices permeating the
COUNTY Jails.

135.    In 2021, Aaron Crawford exhibited suicidal behavior. Indeed, Mr.
Crawford had exhibited suicidal behavior for an appreciable amount of time prior to
his death; however, the Twin Towers Correctional Facility custody and medical staff
were indifferent towards his mental health needs. Mr. Crawford was 36 years old at
the time of his death. Upon information and belief, the custody staff's failure to
properly supervise/monitor and medical staff's failure to provide medical care to Mr.
Crawford was a result of the unconstitutional customs and practices permeating the
COUNTY Jails.

136.    In 2022, Winford Carter, a 36-year-old male, was found unresponsive
and face down in his cell approximately one week after being booked at Twin Towers

**COMPLAINT FOR DAMAGES**

Correctional Facility. Upon booking, Mr. Carter was placed alone in a cell in the High Observation Housing Unit at Twin Towers due to his history of mental illness. Mr. Carter was diagnosed with schizoaffective disorder and paranoid schizophrenia. According to the Deputy Medical Examiner and autopsy report, the "stress of being placed in custody exacerbated [Mr. Carter's] mental condition." Because the Twin Towers Correctional Facility custody staff failed to conduct proper Title 15 safety checks, and because the Twin Towers Correctional Facility medical staff failed to provide adequate medical care, Mr. Carter died in-custody. The custody and medical staff's failure to provide medical care to Mr. Carter was a result of the unconstitutional customs and practices permeating the COUNTY Jails.

137.    In 2022, Joseph Posard died as a result from medical/mental health complications at the Twin Towers Correctional Facility. Indeed, Mr. Posard exhibited signs of suicidality. Instead of placing Mr. Posard in a safety cell, and because Twin Towers Correctional Facility was overcrowded, the Twin Towers Correctional Facility custody and medical staff placed Mr. Posard in a makeshift cell which was essentially the overflow hospital room. Because the Twin Towers Correctional Facility custody staff failed to conduct proper Title 15 safety checks, and because the Twin Towers Correctional Facility medical staff failed to provide adequate medical care to Mr. Posard while housed at Twin Towers Correctional Facility, Mr. Posard committed suicide in the hospital room by creating a noose out of an electrical cord belonging to one of the hospital beds. The custody and medical staff's failure to provide medical care to Mr. Posard was a result of the unconstitutional customs and practices permeating the COUNTY Jails.

138.    In 2023, Kamren Nettles was found unresponsive in his cell at the Men's Central Jail. Mr. Nettles had been experiencing a medical emergency in his cell for an appreciable amount of time on May 13, 2023. Upon information and belief, Men's Central Jail custody staff failed to properly conduct a proper a Title 15 welfare and

safety check resulting in Mr. Nettles' death. Mr. Nettles' death was a result of the unconstitutional customs and practices permeating the COUNTY Jails.

139.    JAMES EVANS's tragic death, which is the basis for this complaint, occurred next in this list.

140.    "[A] jail's failure to provide detainees with a mattress and bed or bunk runs afoul of the commands of the Fourteenth Amendment." *Thompson,* 885 F.2d at 1448. The 1979 Judgment similarly provides that "every prisoner kept overnight in the jail will be accorded a mattress and a bed or bunk upon which to sleep." *Rutherford v. Pitchess*, 457 F. Supp. 104 (C.D. Cal. 1978), *rev'd in part on other grounds sub nom. Block v. Rutherford*, 468 U.S. 576 (1984). The 1992 Stipulation and the 2005 Order reiterate this requirement, set out a procedure for recording floor sleepers, and incorporate the State of California's minimum requirements for county jails from Titles 15 and 24 of the California Code of Regulations. *Rutherford*, 2005 WL 3388141, at *1 ¶¶ 1-3, 5.

141.    An order directed the CDCR to reduce its population in 2009, wherein the Supreme Court observed: Crowding also creates unsafe and unsanitary living conditions that hamper effective delivery of medical and mental health care. A medical expert described living quarters in converted gymnasiums or dayrooms, where large numbers of prisoners may share just a few toilets and showers, as breeding grounds for disease. Cramped conditions promote unrest and violence, making it difficult for prison officials to monitor and control the prison population. . . Crowding may also impede efforts to improve delivery of care. *Brown v. Plata*, 563 U.S. at 519-521 (2011).

142.    Almost fifty (50) years ago, the crowding in COUNTY facilities was described as "a repelling experience" and "a spectacle" compared to "an overcrowded pig pen." *Rutherford*, 457 F. Supp. at 114.

143.    In the Ninth Circuit, an incarcerated person may show a "serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Akhtar v. Mesa*,

698 F.3d 1202, 1213 (9th Cir. 2012). Health care conditions that significantly affect a person's daily activities or result in chronic and substantial pain are serious medical needs, even if they are not immediately life-threatening. *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992). The failure to provide needed medications, or to properly supervise their prescription, is deliberate indifference to serious health care needs. *See, e.g., Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000). This precedent establishes that because James Evans was not provided his needed medications at regulated times during his less than 6 weeks incarcerated, this would qualify as deliberate indifference to his medical needs.

144.   Detainees have inconsistent access to care. Many, not just decedent James Evans, are denied medication they were prescribed and taking prior to arrest, with dangerous effects as previously indicated. The overcrowding itself makes it "difficult" for deputies to observe people despite this being part of their duties. These failures meet both the Eighth Amendment standard of deliberate indifference as well as the Fourteenth Amendment standard for pretrial detainees.

145.   Defendants cannot dispute that COUNTY conditions run afoul of multiple past Court orders and judgments, nor can they dispute that courts have the power to issue further enforcement orders to force a party comply with past judgments or settlements. The conditions clearly violate their constitutional rights when they are "treated in a way antithetical to human dignity." *Hope v. Pelzer*, 536 U.S. 730, 744-45 (2002). The rights of pretrial detainees "are analyzed under the Fourteenth Amendment Due Process Clause, rather than under the Eighth Amendment." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (*citing Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)). The Fourteenth Amendment is more protective than the Eighth Amendment "because the Fourteenth Amendment prohibits *all* punishment of *pretrial detainees*." *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1163 (9th Cir. 2020) (emphasis in original) (*quoting Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir. 2004)). A jailer's conduct constitutes punishment if it is either not rationally related to a legitimate, nonpunitive government

purpose, or is excessive in relation to that purpose. *Bell*, 441 U.S. at 561; *Demery*, 378 F.3d at 1030-33.40 This requires showing at least reckless disregard by jail officials for detained persons' health or safety. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016).

146.    Prior to October 1, 2023, high level COUNTY supervisors, including SHERIFF LUNA, knew or should have known of the years of ongoing failure to provide incarcerated persons timely and reasonable medical health care, knew or should have known of inadequate and/or incompetent staffing, insufficient and inadequate cells and beds, incompetent and inadequate provision of health care and delivery thereof, denying access to outside hospitals or other health programs, failure to take corrective measures, including ignoring judicial orders to abate or take corrective action regarding medical and mental health care to pretrial detainees, notice from quality assurance and death reviews, from litigation alleging failure to provide reasonable medical and mental health care, and from publications of endemic, ongoing and unabated risks of injury or death to incarcerated persons. The number of lawsuits against the COUNTY and throughout the state and the evidence available from those actions is troubling and demonstrative of Defendants' years of deliberate indifference to known ongoing hazards to ill detainees, such as decedent James Evans, and their failure to take corrective action.

147.    Based on this information stated above, it's clear that the death of James Evans was part of a custom, that could have been corrected by Defendants years before he even reached COUNTY facilities in August of 2023.

148.    Correctional Health Services Policy M202.04 requires that staff act to aggressively address any medical problems.[17] Turning a person away when they inform you that they are feeling lightheaded and cannot feel their hands, cannot be classified as "aggressive" to follow this policy. The policy itself is defective as defining the act

---

[17] *See* County of Los Angeles Sheriff's Department Medical Services Bureau, Emergency Response- Inmate or Person Down

of assisting someone as "aggressive" is vague. Nevertheless, standing by for an entire day as a person with health issues, especially seizures, cries for help, is insufficient, and is a constitutional violation of decedent James Evans's right to be free from harm and receive adequate medical care. Surely, a reasonable deputy or COUNTY employee would assist a person seeking medical help if they had a history of seizures, especially seizures while incarcerated so as to ensure nothing further occurred to them.

149. The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY and LASD were a moving force and/or a proximate cause of the deprivations of decedent James Evans's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983. Defendants subjected decedent James Evans to their wrongful conduct, depriving decedent James Evans of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent James Evans, Plaintiff and others would be violated by their acts and/or omissions.

150. As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants COUNTY and LASD, as described above, decedent James Evans suffered serious injuries and death, Plaintiff is entitled to damages, penalties, costs, and attorneys' fees against Defendants COUNTY and LASD.

///
///
///
///
///
///
///

# XII.

## FIFTH CLAIM FOR RELIEF

**Supervisory Liability Causing Constitutional Violations,**

**(Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983)**

**By Plaintiff ESTATE OF JAMES EVANS As Against Defendant SHERIFF ROBERT LUNA and DOES 1 through 10**

151.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

152.   At all material times, SHERIFF LUNA, DOES 1 through 10 had the duty and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff, and discipline the other Defendants employed by their respective agencies in this matter, as well as all employees and agents of the COUNTY and LASD.

153.   Defendants SHERIFF LUNA and DOES 1 through 10 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline the respective employees of their agencies, including Defendants DOES 1 through 10, and other COUNTY and LASD personnel, with deliberate indifference to Plaintiffs', decedent James Evans's, and others' constitutional rights, which were thereby violated as described above.

154.   As Supervisors, Defendants SHERIFF and DOES 1 through 10 each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights to safety and protections while incarcerated at Men's Central Jail and the rights to the serious medical needs of decedent James Evans. Supervising Defendants either directed their subordinates in conduct that violated Decedent's rights, or set in motion a series of acts and omissions by their subordinates that the supervisor knew or reasonably should have known would deprive decedent James Evans of his rights, or knew their subordinates were engaging

in acts likely to deprive decedent James Evans of rights and failed to act to prevent their subordinate from engaging in such conduct, or disregarded the consequence of a known or obvious training deficiency that they must have known would cause subordinates to violate decedent James Evans's rights, and in fact did cause the violation of decedent James Evans's rights. (*See*, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of decedent James Evans' rights.

155.   The unconstitutional customs, policies, practices, and/or procedures of Defendants COUNTY and LASD, as stated herein, were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendants COUNTY and LASD, including Defendants SHERIFF LUNA and Defendant DOES 1 through 10, respectively, with deliberate indifference to Plaintiff's, decedent James Evans's, and others' constitutional rights, which were thereby violated as described above.

156.   The unconstitutional actions and/or omissions of DOES 1 through 10, and other COUNTY and LASD personnel, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and LASD, including Defendants SHERIFF LUNA and Defendant DOES 1 through 10.

157.   As alleged above, in 2023, Defendant LOS ANGELES COUNTY SHERIFF'S DEPARTMENT COUNTY Jails have resulted in forty-five (45) in-custody deaths. [18] These numbers are ***not*** dropping in 2024, as there have already been twenty-four (24) in-custody deaths as of October 8, 2024.[19]

158.   In 2023, Defendant SHERIFF LUNA was the top sheriff of the LASD tasked with ensuring that his jails were free of unreasonable risks of harm, free of deliberate indifference to medical care, and free from negligent deputies who caused constitutional violations. However, despite SHERIFF LUNA being responsible for

---

[18] *See* https://lasd.org/transparency/icd-previous/
[19] *See* https://lasd.org/transparency/icd/

**COMPLAINT FOR DAMAGES**

1  upholding such constitutional rights, SHERIFF LUNA not only acquiesced in the

2  violations of rampant constitutional rights, SHERIFF LUNA knew of deputies'

3  constitutional violations and failed to act to terminate acts by his subordinates.

4  159.   Worse yet, given that so many jail deaths occurred under Defendant

5  SHERIFF LUNA's watch, and in the same year that James Evans died, Defendant

6  SHERIFF LUNA disregarded obvious consequences of the conduct of his

7  subordinate deputies, which was the death and constitutional violations of many.

8  Indeed, SHERIFF LUNA's conduct showed reckless indifference to the deprivation

9  by deputies within LASD jails such that it was a violation of the rights of others,

10  including James Evans. Therefore, SHERIFF LUNA is clearly liable under a

11  supervisory liability theory.

12  160.   Plaintiff is informed and believes and thereon alleges that the details of

13  this incident have been revealed to Defendants SHERIFF LUNA and DOES 1 through

14  10 and that such Defendant-policymakers have direct knowledge of the fact that the

15  death of decedent James Evans was not justified or necessary, but represented

16  deliberate indifference to his rights to be protected and safe while in the COUNTY's

17  custody and his rights to his serious medical needs, as set forth above. Notwithstanding

18  this knowledge, on information and belief, Defendants SHERIFF LUNA and DOES 1

19  through 10 have approved and ratified of the conduct and decisions of Defendants

20  DOES 1 through 10 in this matter and have made a deliberate choice to endorse such

21  conduct and decisions, and the basis for them, that resulted in the death of James Evans.

22  By so doing, Defendants SHERIFF LUNA and DOES 1 through 10 have shown

23  affirmative agreement with the individual Defendants' actions and have ratified the

24  unconstitutional acts of the individual Defendants.

25  161.   Furthermore, Plaintiffs are informed and believe, and thereupon allege,

26  that Defendants SHERIFF LUNA and DOES 1 through 10 and other policymaking

27  officers for the COUNTY and LASD were and are aware of a pattern of misconduct

28  and injury, and a code of silence, caused by COUNTY and LASD custody, medical

1  and mental health staff personnel similar to the conduct of Defendants described herein,

2  but failed to discipline culpable law enforcement officers and employees and failed to

3  institute new procedures and policy within the COUNTY and LASD.

4      162.  Defendants SHERIFF LUNA and DOES 1 through 10, as policymaking

5  officers for the COUNTY and LASD, are required by their own policies and procedures

6  to make emergency referrals. Specifically, here, Correctional Health Services Policy

7  M230.03 requires that Medical Services Bureau personnel identify those patients

8  requiring a provider evaluation and provide access for these patients in accordance with

9  Title 15 Welfare and Safety Checks.[20] As per policy, Urgent Referrals refer to patients

10 who have medical complaints or conditions that need to be addressed within 24 hours.

11 Emergent Referrals refer to patients with medical complaints or conditions that need

12 to be addressed as an emergency and the complaint may be life threatening. Decedent

13 James Evans informed the staff of his condition and requested to see a physician.

14 Seizures, including those that are poorly controlled, are referred to as urgent/emergent

15 referral. With such potent information, Defendants SHERIFF LUNA and DOES 1

16 through 10, were aware that such risks could exist with any person that walked through

17 the doors of COUNTY facilities. Despite this knowledge, Defendants SHERIFF

18 LUNA and DOES 1 through 10, as policymaking officers, failed to use this information

19 to ensure these policies were being adhered to. These policies were thus not followed,

20 and failed to ensure James Evans's medical needs were met by Defendants SHERIFF

21 LUNA and DOES 1 through 10, as policymaking officers.

22     163.  SHERIFF LUNA acted as a policy maker and was aware of the necessity

23 to ensure those who work under him, such as Defendants DOES 1 through 10, must

24 follow these procedures. Vast stakes hang in the distance, with more unnecessary death,

25 forty-five (45) in-custody deaths just that year, looming as a possibility, from a failure

26 to follow policies. Plaintiffs establish that supervisory liability was established through

27

28 [20] *See* County of Los Angeles Sheriff's Department Medical Services Bureau, Provider Line Referral.

1   a causal connection because SHERIFF LUNA, as a supervisor, failed to terminate the

2   acts of his subordinates, despite being aware that these policies were not being

3   followed.

4       164.   Upon information and belief, SHERIFF LUNA knew or should have

5   known about the danger posed by failure to follow medical procedures, specifically

6   medical referrals because as Sheriff, he received several reports in the *Rutherford*

7   actions on the deaths of other incarcerated persons who died due to failure to be

8   properly medicated, referred, and most painfully of all, assisted.

9       165.   Despite forty-five (45) in-custody deaths that very year, SHERIFF LUNA

10   never showed any endeavors or attempts towards improvement of the policies that he

11   was to follow and instructed his subordinates to follow. Regardless of being aware that

12   the next person who would become incarcerated was at risk, there were no efforts given

13   to ensure that new policies would be implemented to ensure their medical safety or

14   prevent against their death.

15       166.   Finally, it would be unreasonable to conclude that SHERIFF LUNA was

16   unaware of the pattern of detainees dying in his Jails. If a policy maker such as

17   SHERIFF LUNA was to never question why such an alarming rate of individuals are

18   dying at the hands of the COUNTY and LASD, then it is evident policy makers for the

19   COUNTY and LASD are being not only reckless, but also not supervising their

20   subordinates. SHERIFF LUNA, because he had the knowledge of the deaths that were

21   occurring under him, should have addressed and/or terminated the series of acts by

22   others, which he was aware were causing the deaths of incarcerated individuals such

23   as decedent James Evans.

24       167.   In the *USA v. County of Los Angeles, et al*. lawsuit, the in-custody deaths

25   occurring then were proven to be a consequence of various constitutional violations

26   and were meant to be reformed. The reform was designed to prevent and respond more

27   effectively to health concerns. As such, SHERIFF LUNA knew or should have known

28   that these acts caused by his subordinates' unconstitutional actions were possible, as

**COMPLAINT FOR DAMAGES**

1  he had been on notice since 2015, seven (7) years prior to the start of his time as Sheriff.

2  Additionally, SHERIFF LUNA knew or should have known these unconstitutional acts

3  could risk the life of any person who would find themselves incarcerated, including a

4  vulnerable person such as decedent James Evans.

5        168.  The aforementioned customs, policies, practices, and procedures; the

6  failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate,

7  investigate, and discipline; and the unconstitutional orders, approvals, ratification, and

8  toleration of wrongful conduct of Defendants SHERIFF LUNA and DOES 1 through

9  10 were a moving force and/or a proximate cause of the deprivations of decedent James

10  Evans's clearly established and well-settled constitutional rights in violation of 42

11  U.S.C. § 1983, as more fully set forth above.

12        169.  Defendants subjected decedent James Evans to their wrongful conduct,

13  depriving decedent James Evans of rights described herein, knowingly, maliciously,

14  and with conscious and reckless disregard for whether the rights and safety of decedent

15  James Evans and others would be violated by their acts and/or omissions.

16        170.  As a direct and proximate result of the unconstitutional actions, omissions,

17  customs, policies, practices, and procedures of Defendants SHERIFF LUNA and

18  DOES 1 through 10 as described above, Plaintiff sustained serious and permanent

19  injuries and is entitled to damages, penalties, costs, and attorneys' fees.

20  **XIII.**

21  **<u>SIXTH CLAIM FOR RELIEF</u>**

22  **Negligence – Wrongful Death**

23  **By All Plaintiffs As Against All Defendants**

24        171.  Plaintiffs reallege and incorporate herein by reference each of the

25  preceding paragraphs of this complaint, and any subsequent paragraphs.

26        172.  At all times, Defendants DOES 1 through 10 owed Plaintiffs and decedent

27  James Evans the duty to act with due care in the execution and enforcement of any

28  right, law, or legal obligation.

173. At all times, Defendants DOES 1 through 10 owed Plaintiffs and decedent James Evans the duty to act with reasonable care.

174. These general duties of reasonable care and due care owed to Plaintiffs and decedent James Evans by Defendants DOES 1 through 10 include but are not limited to the following specific obligations:

    a. To summon, or transport Decedent to, necessary and appropriate emergency medical and mental health care;

    b. To refrain from unreasonably creating danger or increasing Decedent's risk of harm;

    c. To use generally accepted law enforcement procedures and tactics that are reasonable and appropriate for Decedent's status as a person in medical and mental health crisis with serious medical and mental health needs;

    d. To conduct state mandated safety and welfare checks of inmates in the custody of the COUNTY Jails;

    e. To refrain from abusing their authority granted them by law; and

    f. To refrain from violating Plaintiffs' and Decedent's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

175. Defendants DOES 1 through 10, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiffs and decedent James Evans.

176. Defendants COUNTY and LASD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

177. As a direct and proximate result of these Defendants' negligence, Plaintiffs and decedent James Evans sustained injuries and damages, and against each and every Defendant named in this claim for relief in their individual capacities are entitled to relief, including punitive damages against such individual Defendants.

49

**COMPLAINT FOR DAMAGES**

# XIV.

## SEVENTH CLAIM FOR RELIEF

### Negligence – Medical Malpractice

**By Plaintiff ESTATE OF JAMES EVANS As Against DOES 1 through 10**

178.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

179.   The present claim for relief is brought pursuant to Cal. Gov. Code §§ 815.2 and 820. Under Section 820 of the Government Code, as public employees, Defendants DOES 1 through 10, inclusive, are liable for injuries caused by their acts or omissions to the same extent as private persons. Under Section 815.2 of the Government Code, as public entities, Defendants COUNTY and LASD are liable for injuries caused by the acts or omissions of their employees committed within the course and scope of their employment. This cause of action is not alleging direct liability against Defendants COUNTY and LASD, only vicarious liability.[21]

180.   Decedent James Evans was under the care and treatment of Defendants DOES 1 through 10, all of whom were COUNTY medical staff assigned to the COUNTY Jails, including Men's Central Jail, who were required to examine, treat, monitor, prescribe for and care for him and to provide him with medical attention when he suffered a medical emergency. These Defendants, acting within the scope and course of their employment with Defendants COUNTY and LASD, negligently, carelessly and unskillfully cared for, attended, handled, controlled; failed to monitor and follow-up; abandoned; failed to classify, failed to appropriately diagnose and/or refer decedent James Evans to specialist medical care providers; negligently failed to provide physician care; negligently failed to provide psychiatry care;  carelessly failed to detect, monitor, and follow-up with his condition; and negligently, carelessly and unskillfully failed to possess and exercise that degree of skill and knowledge ordinarily

---

[21] *See* Gov. Code, § 815.2, subds. (a), (b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

1    possessed and exercised by others in the same profession and in the same locality as

2    Defendants for the benefit of their patient and dependent pre-trial detainee James

3    Evans.

4         181.   Specifically, Correctional Health Services Policy M202.04 states that "it

5    is incumbent upon Medical Services Bureau staff to aggressively respond to declared

6    medical emergencies in or near the various facilities and to render care and treatment

7    to the best of their ability, within their scope of practice." [22]  if DOES 1 through 10 did

8    not consider decedent James Evans to be experiencing a medical emergency, their own

9    policy then states, "When staff are presented by Custody with an inmate for medical

10   evaluation, who is not a "person down" or whole condition is not emergent in nature,

11   it is their responsibility to follow through to ensure appropriate disposition or follow

12   up."[23] As examined above, decedent James Evans condition would be classified as

13   Emergent, if they had properly classified him. Nothing in these facts suggests that

14   James Evans was followed up with after requesting medical attention merely twenty-

15   four (24) hours before his passing on October 1, 2023.

16        182.   Despite these policies, nothing in DOES 1 through 10 behavior suggests

17   that they acted "aggressively" to address the medical emergency that decedent James

18   Evans was experiencing for an entire day before being found by COUNTY employees.

19   This failure to follow up and to follow procedure were both negligent acts that cost

20   decedent James Evans precious time, and disturbingly, his life.

21        183.   It was inappropriate and unreasonable given James Evans's health

22   condition, and requests made by himself regarding his need for medical attention, to

23   leave him without any assistance for an entire day. It was thoroughly explicit that there

24   was a need for medical attention.

25

26

27   _____

[22] *See* County of Los Angeles Sheriff's Department Medical Services Bureau, Emergency Response- Inmate or Person Down.

28   [23] *Id.*

**COMPLAINT FOR DAMAGES**

184.   Defendant supervisors and each of them failed to supervise, train and monitor their subordinates, to maintain proper supervision, classification and staffing, to timely provide decedent James Evans emergency medical and mental health care, failed to provide adequate and competent staffing, and to ensure the care and treatment ordered for decedent James Evans was provided.

185.   As a direct and legal result of the aforesaid negligence and carelessness of Defendants' actions and omissions, Plaintiffs sustained injuries and damages, and against these Defendants, and each of them, are entitled to compensatory damages and as applicable to this claim for Medical Negligence, to be proven at time of trial.

186.   Defendants COUNTY and LASD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

## XV.

## EIGHTH CLAIM FOR RELIEF

### Violation of California Government Code § 845.6

### By Plaintiff ESTATE OF JAMES EVANS As Against All Defendants

187.   Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

188.   JAMES EVANS was in need of immediate medical care and treatment, and Defendants DOES 1 through 10, each failed to take reasonable action to summon immediate medical care and treatment. Indeed, DOES 1 through 10 further deliberately further failed to summon immediate medical care given that they should have known about James Evans's dire medical condition. Rather, instead of following up with decedent James Evans after he asked for medical attention a day prior to his death, he was left to be found lifeless in his cell on October 1, 2023.

189.   Defendants DOES 1 through 10 should have recognized the dire situation James Evans was in and should have promptly summoned medical care. However,

1   despite being charged with overseeing staff and James Evans's safety, Defendants
2   DOES 1 through 10 failed to summon immediate medical care.

3       190.   As a direct and proximate result of the aforementioned acts of these
4   Defendants, decedent James Evans was injured as set forth above, and their losses
5   entitle Plaintiff to all damages allowable under California law. Plaintiff sustained
6   serious and permanent injuries and is entitled to damages, penalties, costs, and attorney
7   fees under California law, including punitive damages against these individual
8   Defendants.

9       191.   Each such individual defendant, employed by and acting within the course
10  and scope of their employment with Defendants COUNTY and LASD, knowing and/or
11  having reason to know of decedent James Evans's need for immediate medical care
12  and treatment, failed to take reasonable action to summon such care and treatment in
13  violation of California Government Code § 845.6.

14      192.   Defendants COUNTY and LASD are vicariously liable for the violations
15  of state law and conduct of their officers, deputies, employees, and agents, including
16  individual named defendants, under California Government Code § 815.2.

17  **XVI.**

18  **<u>NINTH CLAIM FOR RELIEF</u>**

19  **Violation of California Civil Code §52.1 (Tom Bane Act)**

20  **By Plaintiff ESTATE OF JAMES EVANS As Against All Defendants**

21      193.   Plaintiffs reallege and incorporate herein by reference each of the
22  preceding paragraphs of this complaint, and any subsequent paragraphs.

23      194.   Plaintiff brings the claims in this claim for relief as a survival claim
24  permissible under California law, including Cal. Code of Civ. Proc. § 377.20 *et. seq.*

25      195.   By their acts, omissions, customs, and policies, Defendants DOES 1
26  through 10, each acting in concert/conspiracy, as described above, while decedent
27  James Evans was in custody, and by threat, intimidation, and/or coercion, interfered
28  with, attempted to interfere with, and violated James Evans's rights under California

**COMPLAINT FOR DAMAGES**

Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

  a. The right to be free from objectively unreasonable treatment and deliberate indifference to Decedent's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

  b. The right for the familial association to be free from government interference as secured by the Fourteenth Amendments to the United States Constitution;

  c. The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1; and

  d. The right to emergency medical care as required by California Government Code §845.6.

  196. Defendants DOES 1 through 10's violations of decedent James Evans's due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act. Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of James Evans's rights as described above, Defendants violated James Evans's rights by the following conduct constituting threat, intimidation, or coercion:

  a. With deliberate indifference to Decedent's serious medical and mental health needs, suffering, and risk of grave harm including death, depriving Decedent of necessary, life-saving care for his medical needs;

  b. With deliberate indifference to hazards that posed a risk to pretrial detainees, such as Decedent;

  c. Subjecting Decedent to ongoing violations of his rights to prompt care for his serious medical and mental health needs over days, causing immense

and needless suffering, intimidation, coercion, and threats to his life and well-being;

d.  Deliberately contracting for and causing the provision of inadequate and incompetent medical health care to Los Angeles County jail detainees and inmates;

e.  Requiring medical and mental health staff to work outside their scope of practice, and conduct assessments, triage, and make medical and housing decisions for patients, including Decedent, they are not competent to make; and

f.  Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as Decedent would be subjected to violence, threat, intimidation, coercion, and ongoing violations of rights as Decedent was here.

197.  The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of decedent James Evans's rights, or to any legitimate and lawful jail or law enforcement activity.

198.  Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

199.  Defendants owed James Evans access to healthcare, as per their own policies and procedures. As per Correctional Health Services Policy and Procedure M200.09, healthcare staff are responsible for initiating passes and contacting custody personnel to ensure patient receive ***timely*** access to medical and dental appointments, mental health treatment, nursing treatments, radiology examination, laboratory tests, etc.[24]

---

[24] *See* County of Los Angeles Sheriff's Department Medical Services Bureau, Access to Healthcare.

**COMPLAINT FOR DAMAGES**

200.   JAMES EVANS was not properly given adequate access to his medications, treatment as per the information in the forty-one (41) days he was incarcerated, despite having post-traumatic seizures. Not allowing someone with such health conditions access to see a physician, and then not allowing this same person to see a physician for the entire day after, is not timely. Twenty-four (24) hours is critical medically, and this behavior, accompanied by the lack of assistance, despite effort by decedent James Evans, shows indifference to his needs by defendants.

201.   Further, each Defendant violated decedent James Evans's rights with reckless disregard and with the specific intent and purpose to deprive him of his enjoyment of those rights and of the interests protected by those rights. As examined previously, the act of leaving James Evans with no assistance, is reckless disregard in itself. This was done with specific intent, as DOES 1 through 10 had full agency to assist James Evans, and chose, consciously, to leave him suffering for an entire day at least. Without any type of assistance, it is unfathomable that James Evans would be able to exercise his rights.

202.   Defendant COUNTY is vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

203.   As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of decedent James Evans's rights under the United States and California Constitutions, Plaintiff sustained injuries and damages, and against each and every Defendant is entitled to relief, including punitive damages against all individual Defendants, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys' fees, and civil penalties.

///

///

///

///

**COMPLAINT FOR DAMAGES**

## XVII.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs ESTATE OF JAMES EVANS, LASHONDA BANKS, and GODFREY EVANS hereby make a demand for a jury trial in this action respectfully requests that the Court enter a judgment as follows:

A.    Wrongful death of James Evans, pursuant to Cal. Code of Civ. Proc. § 377.60 *et. seq.*;

B.    Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60 *et. seq.*;

C.    James Evans's coroner's fees, funeral and burial expenses, pursuant to Cal. Code of Civ. Proc. § 377.20 *et. seq.*;

D.    Violation of James Evans's constitutional rights, pursuant to Cal. Code of Civ. Proc. § 377.20 *et. seq.* and federal civil rights law;

E.    James Evans's loss of life, pursuant to federal civil rights law;

F.    James Evans's conscious pain, suffering, and disfigurement, pursuant to federal civil rights law;

G.    General Damages, including wrongful death and survival damages, in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

H.    Non-Economic Damages, including wrongful death and survival damages, according to proof plus all further and proper relief;

I.    Punitive damages as to individual peace officer defendants;

J.    Attorney's fees pursuant to State Law (Cal. Code Civ. Proc. § 1021.5 & private attorney general doctrine);

K.    Penalties under the Tom Bane Act;

L.    Interest; and

**COMPLAINT FOR DAMAGES**

M.    All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§ 377.20 *et. seq*., 377.60 *et. seq*., and 1021.5; California Civil Code §§ 52 *et. seq*., 52.1; and as otherwise may be allowed by California and/or federal law.

Dated: October 24, 2024          **GASTÉLUM LAW, APC**

By: _____
Denisse O. Gastélum, Esq.
Attorneys for Plaintiffs,
ESTATE OF JAMES EVANS, et al.

Dated: October 24, 2024          **LAW OFFICES OF CHRISTIAN CONTRERAS**
**A PROFESSIONAL LAW CORPORATION**

By: _____
Christian Contreras, Esq.
Attorneys for Plaintiffs,
ESTATE OF JAMES EVANS, et al.

**COMPLAINT FOR DAMAGES**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs ESTATE OF JAMES EVANS, LASHONDA BANKS, and
GODFREY EVANS, hereby make a demand for a jury trial in this action.

Dated: October 24, 2024          **GASTÉLUM LAW, APC**

By: _____
Denisse O. Gastélum, Esq.
Attorneys for Plaintiffs,
ESTATE OF JAMES EVANS, et al.

Dated: October 24, 2024          **LAW OFFICES OF CHRISTIAN CONTRERAS**
                                 **A PROFESSIONAL LAW CORPORATION**

By: _____
Christian Contreras, Esq.
Attorneys for Plaintiffs,
ESTATE OF JAMES EVANS, et al.

**COMPLAINT FOR DAMAGES**